IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| James Douglas Wolfe, | C/A No. 2:19-cv-902-BHH-BM |
|---|---|
| Plaintiff, | |
| v. | |
| The North Charleston Police Department, the City of North Charleston, Detective J. Jellico, Jennifer Butler, Charles Benton and R.E. Stone, all in their individual and official capacities, | **DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | |

NOW COME the Defendants[1] and hereby give notice that on the tenth day or as soon thereafter as the court can hear the motion, these defendants will ask the court for an Order dismissing certain defendants and claims from this action pursuant to Fed. Rs. Civ. P. 8 and 12 and the South Carolina Tort Claims Act. Defendants assert that a supporting memorandum is not required for this motion as a full explanation of the motion as required by Local Civ. Rule 7.05 is contained within the motion and an additional memorandum would serve no useful purpose.

**LAW AND ARGUMENT**

In analyzing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 132 S.Ct. 1327 (2012); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008). Although a court "assume[s] the facts

---

[1] Officer R.E. Stone has not yet been served as of the date of this filing. Therefore, he is not a moving defendant at this time. If/when he is served, Defendants' counsel will file a supplemental pleading to add him to this motion.

1

alleged in the complaint are true and draw[s] all reasonable factual inferences in [plaintiff's] favor,'" *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002), a court need not accept a complaint's legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Twombly*, 550 U.S. at 555. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302 (quotation omitted); *see Iqbal*, 556 U.S. at 678. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679.

## I.    THE NORTH CHARLESTON POLICE DEPARTMENT IS NOT A SUI JURIS ENTITY CAPABLE OF BEING SUED.

The City of North Charleston and the North Charleston Police Department ("NCPD") are one in the same for purposes of this litigation such that this action may not be brought against both. NCPD is merely an agency of the City, and therefore should be dismissed as it is not a legal entity subject to suit.

A local police department is an integral part of a city. *McNeil v. Rock Hill Police Dep't*, No. 0:12-1933-CMC-SVH, 2012 WL 6863917, at *2 (D.S.C. Dec. 27, 2012) (dismissing local police department as it is not legal entity subject to suit). Sheriff's departments and police departments are not usually considered legal entities subject to suit. *See, e.g.*, *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (dismissing Denver Police Department as not a suable entity); *Post v. City of Fort Lauderdale,* 750 F.Supp. 1131 (S.D. Fla. 1990) (dismissing city police department and holding that city itself was proper party); *Shelby v. City of Atlanta*, 578 F.Supp.

2

1368, 1370 (N.D. Ga. 1984) (dismissing city police department as not an entity not subject to suit because it "is merely the vehicle through which the City government fulfills its policing functions").

Thus, NCPD is not considered an independent entity subject to suit under § 1983. *See Burris v. N. Charleston Police Dept.*, No. 2:13-cv-00699-GRA-SVH, 2013 WL 2897031, at *3 (D.S.C. June 13, 2013) (*citing Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985); *McNeil v. Rock Hill Police Dept.*, C/A No. 0:12–1933–CMC–SVH, 2012 WL 6863917, at *2 (D.S.C. Dec. 27, 2012), adopted by 2013 WL 168050 (D.S.C. Jan.16, 2013)).

Because NCPD is not a separate entity, a person amenable to suit under § 1983, or a legal entity subject to suit, this defendant should be summarily dismissed from this action. The undersigned spoke with counsel for plaintiff and explained this and he has agreed to dismiss the Police Department on this basis.

## II. PLAINTIFF HAS MISSED THE STATUTE OF LIMITATIONS FOR THE STATE LAW CAUSES OF ACTION AND THEREFORE THEY SHOULD BE DISMISSED.

The Complaint alleges a variety of state law tort causes of action against "all Defendants". (Count III). The South Carolina Tort Claims Act ("TCA"), S.C. Code Ann. § 15-78-10 to -220, governs these causes of action because the TCA "constitutes the exclusive remedy for any tort committed by an employee of a governmental entity." The statute of limitations for any action brought pursuant to the TCA is two years, unless a verified claim is filed within one year of the occurrence. S.C. Code Ann. § 15-78-110. In this case, there is no evidence that any verified claim was filed. Therefore the statute of limitations is two years. All of the plaintiff's claims relate to his allegation that officers made false and misleading statements in the arrest warrant affidavits. There were two arrest warrants that were obtained by North Charleston police officers. Those

affidavits are dated March 25, 2016 and April 11, 2016. (*See* ECF 1 ¶ 19). Defendants ask this court to take judicial notice of the arrest warrants for the charges from which this civil action arises.[2]

Thus, the latest possible date for the expiration of the statute of limitations is April 11, 2018—two years after the April 11, 2016 arrest warrant. The allegations do not depend on the outcome of the criminal charges. Plaintiff knew or should have known of his position that the allegations in the warrant affidavits were false or misleading as soon as he saw them, therefore triggering the running of the statute of limitations. *See Smith v. Porter*, 6:17-cv-2105, 2017 WL 6767391, at *4 (D.S.C. Oct. 30, 2017) (holding plaintiff's claim arising out of arrest procured through allegedly false statements in warrant affidavit was barred by statute of limitations which began to run on date plaintiff was served with arrest warrant), *report and recommendation adopted* 2018 WL 263910 (D.S.C. Jan. 2, 2018); *Hewitt v. D.P. Garrison*, 6:12-cv-3403, 2013 WL 6654237, at *6–7 (D.S.C. Dec. 17, 2013) (same); *Temple v. Johnson*, 3:09-cv-2655, 2010 WL 5136217, at *4 (D.S.C. Nov. 8, 2010) (same), *report and recommendation adopted* 2010 WL 5136215 (D.S.C. Dec. 9, 2010).

Therefore, any claims filed pursuant to the TCA after April 11, 2018 are outside the statute of limitations and should be dismissed.

---

[2] *See, e.g.*, *Papasan v. Allain*, 478 U.S. 265, 268 n. 1 (1986) ("Although this case comes to us on a motion to dismiss …, we are not precluded in our review of the complaint from taking notice of items in the public record …."); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (taking "judicial notice of matters of public record" in ruling upon motion to dismiss); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (noting it was proper during review of motion to dismiss to consider "publicly available [statistics] on the official redistricting website of the Virginia Division of Legislative Services"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.1989) ("We note that the most frequent use of judicial notice is in noticing the content of court records.") (internal citations and quotations omitted); *Kinloch v. DeBusk*, 4:12-361-DCN-BM, 2012 WL 1319484, at *1 (D.S.C. Mar. 21, 2012), *aff'd*, CA 4:12-361 DCN, 2012 WL 1339602 (D.S.C. Apr. 17, 2012) ("This court takes judicial notice of the online records of Plaintiff's state court proceedings ….").

## III. THE INDIVIDUALS ARE NOT PROPER DEEFNDANTS FOR THE STATE LAW CAUSES OF ACTION UNDER THE SOUTH CAROLINA TORT CLAIMS ACT AND SHOULD THEREFORE BE DISMISSED FROM SUCH CLAIMS.

If the Court declines to enforce the statute of limitations and allows the claims to go forward, defendants assert that the individuals are not proper parties to any state law tort causes of action. The South Carolina Tort Claims Act ("TCA"), S.C. Code Ann. § 15-78-10 to -220, governs these causes of action because the TCA "constitutes the exclusive remedy for any tort committed by an employee of a governmental entity." S.C. Code Ann. § 15-78-70(a). Pursuant to the TCA:

> On or after January 1, 1989, a person, when bringing an action against a governmental entity under the provisions of this chapter, <u>shall name</u> as a party defendant <u>only the agency or political subdivision for which the employee was acting</u>.... <u>In the event that the employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as the party defendant.</u>

S.C. Code Ann. § 15-78-70(c) (emphasis added); *see also Faile v. S.C. Dep't of Juvenile Justice*, 350 S.C. 315, 328–30, 566 S.E.2d 536, 543 (2002) (holding that S.C. Code Ann. § 15-78-70(c) requires that "only the entity employing the employee whose act gives rise to the claim may be sued").

At all times relevant to the allegations in the Complaint, the individually named defendants Benton, Jellico, and Butler were employees of the City of North Charleston acting within the course and scope of their official duties as City of North Charleston police officers. Therefore, Benton, Jellico, and Butler are not proper defendants and should be dismissed from this action, and the City of North Charleston—as "the agency or political subdivision for which the employee[s] w[ere] acting"—should be substituted in their place as the party defendant pursuant to S.C. Code Ann. § 15-78-70(c).

Wherefore, for the foregoing reasons, individual Defendants Jellico, Butler, and Benton respectfully request that the court dismiss them from this state law tort action and substitute the City of North Charleston in their place.

## IV. THERE ARE NO ALLEGATIONS AGAINST JENNIFER BUTLER AND THEREFORE SHE SHOULD BE DISMISSED FROM THE COMPLAINT.

Although the later paragraphs of the complaint refer to "defendants" collectively, the initial paragraphs of the Complaint set out the basis for the plaintiff's later causes of action. The only paragraph that includes Butler's name is paragraph 14. The only allegation in that paragraph is that she was a duly appointed and acting law enforcement officer for the City of North Charleston and the North Charleston Police Department, acting under color of state law." The very next paragraph starts the facts that form the basis for the causes of action. Importantly, nowhere in the facts section is Butler mentioned. Jellico and Benton are alleged to have interviewed the plaintiff. Jellico, Benton and Stone are alleged to have collaborated on the warrant affidavit. Allegations in the causes of action all come back to the language contained in the warrant affidavit. Butler is not even alleged to have been involved in the interview or drafting of the warrant. Further, there are no factual statements setting out any factual basis for liability against Butler. Paragraph 25 says "[t]hese actions by the Defendants were intentional….." but no actions have been alleged to have been committed by Butler.

Because the Complaint fails to allege any wrongdoing by Butler, she is entitled to be dismissed from this matter in both her individual and official capacities.

V.   **PLAINTIFF HAS FAILED TO PROPERLY ALLEGE A CLAIM FOR MUNICIPAL LIABILITY.**

Assuming *arguendo* that Plaintiff did suffer a deprivation of his constitutional rights at the hands of an NCPD Officer, the City would only be liable for injuries stemming from that deprivation under Section 1983 "if [they] cause[d] such a deprivation through an official policy or custom." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). The City cannot be liable under Section 1983 based on a *respondeat superior* theory. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691.

In *Carter*, the Fourth Circuit identified four possible sources of "official policy or custom" giving rise to such liability: (1) "written ordinances and regulations;" (2) "affirmative decisions of individual policymaking officials;" (3) omissions by policymaking officials "that manifest deliberate indifference to the rights of the citizens;" or (4) a practice "so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." *Carter*, 164 F.3d at 218 (quotations and citations omitted).

   **1.   Written Ordinances and Regulations**

Plaintiff alleges that the City "adopted a policy of law enforcement which operates on a theory of 'charge them now, investigate later.'" (Compl. ¶ 33). Plaintiff further alleges the City has a "…culture of unlawful conduct which is prevalent in the North Charleston Police Department." (Compl. ¶ 34).

Municipal liability will attach only for those policies or customs having a "*specific* deficiency or deficiencies ... such as to make the *specific* violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run." *Carter*, 164 F.3d at 218 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)) (emphasis added in *Carter*). The requirement of a close fit between the unconstitutional policy and the constitutional violation

serves three purposes. First, it helps to ensure that a municipality has made "a deliberate choice to follow a course of action ... from among various alternatives." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted). Second, it assures that this choice was in fact the "moving force" behind a deprivation of federal rights. *Monell*, 436 U.S. at 694. A careful examination of this "affirmative link" is essential to avoid imposing liability on municipal decision makers in the absence of fault and causation. *Carter*, 164. F.3d at 218. "Third, by requiring litigants ***to identify the offending municipal policy with precision***, courts can prevent trials from straying off into collateral accusations of marginally related incidents." *Id.* (emphasis added).

Here, the Complaint only alleges generalities in regard to NCPD policy. Importantly, the Complaint fails to identify any NCPD policy with a *specific* deficiency that would make the alleged *specific* violation almost bound to happen. Plaintiff merely alleges that NCPD's policies and procedures "operate[s] on a theory of 'charge them now, investigate later.'" (Compl. ¶ 33). As stated in *Carter*, "[t]he challenged policy or custom cannot merely be the abstract one of violating citizens' constitutional rights." This is precisely what Plaintiff has done in his Complaint. In the words of *Iqbal*, Plaintiff's allegation of the existence of an unconstitutional policy "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Therefore, Plaintiff has failed to state a claim for municipal liability based on the first source of liability identified in *Carter*.

2. **Affirmative Decisions of Individual Policymaking Officials**

Similarly, nowhere in the Complaint does Plaintiff cite to any affirmative decisions of individual NCPD policymaking officials which caused Plaintiff's alleged deprivation of constitutional rights. Instead he claims "officers are encouraged to disregard the rights of citizens

8

under investigation and are coached in how to subsequently justify their unlawful behaviors." (Compl. ¶36). Therefore, Plaintiff has failed to state a claim for municipal liability based on the second source of liability identified in *Carter*.

### 3. Omissions by Policymaking Officials

Plaintiff vaguely alleges Section 1983 liability against the City based on its alleged "custom" to "inadequately train and supervise its officers with regard to the constitutional protections of the citizenry." *See* Compl. ¶35. No municipality can "be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. A plaintiff's theory is most likely to slip into that forbidden realm when he alleges municipal omission—either a policy of deliberate indifference or the condonation of an unconstitutional custom. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

When liability is premised on omissions in supervising law enforcement officers, a plaintiff must show that the officials were at least deliberately indifferent to the constitutional rights of the citizenry in their failure to supervise. *Carter*, 164 F.3d at 218; *Spell*, 824 F.2d at 1390. Allegations of mere negligence are insufficient to state a claim. *Spell*, 824 F.2d at 1390. Further, liability must be founded on more than a single instance as the agency officials must first be aware of prior misconduct. *See Carter*, 164 F.3d at 218; *Spell*, 824 F.2d at 1390.

Other than conclusory statements, Plaintiff has not presented any factual support for his claim that the City failed to properly train or supervise its officers regarding policies and procedures or constitutional protections. Plaintiff does not cite to any specific past incidents that would support his claim, and instead, alleges (without any foundation or factual support) that the officers were "encouraged to disregard the rights of citizens under investigation and are coached in how to subsequently justify their unlawful behaviors" without further detail as to how it relates

9

to Plaintiff's allegations, as evidence of inadequate training and supervision constituting a pattern of constitutional violations. (Compl. ¶ 36). "This nebulous chain fails the 'rigorous standards of culpability and causation' required for municipal liability under section 1983. *Carter*, 164 F.3d at 219 (quoting *Brown*, 520 U.S. at 405).

Plaintiff's allegations are merely "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Moreover, Plaintiff has presented no facts indicating that any alleged failure to train or supervise resulted from the City policymakers' deliberate indifference to citizens' constitutional rights. *See, e.g.*, *Brown*, 520 U.S. at 407–09; *Harris*, 489 U.S. at 391; *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000); *Semple v. City of Moundsville*, 195 F.3d 708, 713–14 (4th Cir. 1993); *Spell*, 824 F.2d at 1390. Therefore, Plaintiff has failed to state a claim for municipal liability based on the third source of liability identified in *Carter*.

### 4. Practice Constituting Custom or Usage with the Force of Law

Outside of formal decision-making channels, a municipal custom may arise if a practice is so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (internal quotation marks omitted). Plaintiff has done no more than allege the legal conclusion that the officers' actions "were the result of a policy of indifference and corruption within the City of North Charleston Police Department." (Compl. ¶ 37). Plaintiff has made no factual allegation regarding a City custom of encouraging officers to disregard the rights of citizens that is so "persistent and widespread" and so "permanent and well-settled" that the City could be held liable under *Monell*. The only factual allegations contained in the Complaint relate to the one isolated investigation which began on or about March 23, 2016, when Plaintiff's infant was treated at the hospital for serious, inflicted injuries. As stated

in *Carter*, "[n]or does this meager history of isolated incidents approach the 'widespread and permanent' practice necessary to establish municipal custom." *Carter*, 164 F.3d at 220 (citing *Greensboro Prof'l Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir.1995)). In fact, Plaintiff has failed to allege a single relevant incident prior to his own situation of which the City had knowledge and in which they acquiesced. *See Spell*, 824 F.2d at 1391.

The plaintiff has suffered no individual violation of rights to support a claim for municipal liability. Even if he did, Plaintiff has failed to state a claim for municipal liability based on any of the four sources of municipal liability identified in *Carter*. Therefore, Plaintiff's § 1983 *Monell* claim against the City should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) as the Complaint fails to state such a claim.

## CONCLUSION

Based on the law and arguments above, Defendant North Charleston Police Department should be dismissed as it is not a *sui juris* entity; Detective Benton, Detective Jellico, and Detective Butler should be dismissed from any state law causes of action under the Tort Claims Act; the Tort Claims Act claims should be dismissed as they were filed after the expiration of the applicable statute of limitations; Detective Butler should be dismissed as there are no allegations set forth against her; and the municipal liability claim should be dismissed. Additionally, if North Charleston Police Department and/or Jennifer Butler are dismissed from this action, the defendants request that they be removed from the caption.

{*Signature Page Follows*}

                                                      s/ *Robin L. Jackson*
                                                     Robin L. Jackson, Fed. ID. 07465
                                                     Senn Legal, LLC
                                                     3 Wesley Drive
                                                     P.O. Box 12279
                                                     Charleston, SC 29407 (29422)
                                                     Phone: (843) 556-4045
                                                     Fax: (843) 556-4046
                                                   Robin@sennlegal.com

                                                   Attorney for Defendants

May 20, 2019
Charleston, South Carolina