# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| James Douglas Wolfe, | ) | Civil Action No. 2:19-0902-RMG |
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| City of North Charleston, *et al.*, | ) | |
| Defendants. | ) | |

Before the Court is the Magistrate Judge's Report and Recommendation ("R & R") that Defendants' motion for summary judgment on all claims be granted. (Dkt. No. 124.) For the reasons set forth below, the Court adopts the R & R as the order of the Court and grants Defendants' motion for summary judgment.

**I.     Background**

In 2018, Plaintiff was prosecuted in the Charleston County Court of General Sessions for Unlawful Conduct Towards a Child and Inflicting Great Bodily Injury Upon a Child. The jury found him not guilty on both charges.

The charges stemmed from a 2016 incident in which Plaintiff's wife brought their eight-week-old infant to Summerville Medical Center for treatment of a lacerated lip. Examining doctors discovered other injuries to the infant: bruising on her face, back and trunk, as well as several fractured ribs at different stages of healing. Upon this discovery, Dr. Adam Barouh contacted the North Charleston Police Department, as required by law enforcement and the Department of Social Services. Dr. Barouh showed the officers x-rays of the infant's broken bones and observed that her lacerated lip was not likely the result of an accidental fall. The infant was transferred to the Medical University of South Carolina, where doctors again

examined her and identified even more injuries: additional bruising; sixteen rib fractures; internal bleeding in the spinal cord, brain, and left lung; and a fractured clavicle, scapula, spinal vertebra, left pelvis, right pelvis, femur, and tibia.

Officers interviewed the infant's mother, who informed them that her husband, Plaintiff, was with the infant when these injuries occurred, that he had dropped the infant on the floor two days prior, and that he admitted to hitting the infant against a door. She also informed officers that when Plaintiff would "massage" the infant, she could hear cracking sounds from the infant's body, and that the infant would scream when Plaintiff held her. She then informed the officers that Plaintiff was, at that time, home alone with their toddler.

Defendant Detective Benton and officers went to Plaintiff's home. They took photographs, and then Plaintiff agreed to be interviewed by them at City Hall. Defendants Benton and Jellico interviewed Plaintiff. Plaintiff stated he had squeezed the infant, tossed her onto a couch, hit her head on a doorknob, and sat on the baby's leg. Plaintiff made statements to the officers such as: "I'm sorry for hurting" her, "I have been feeling short tempered," "I don't know why I did what happened to her," and "I will tell you that I did it, I will take full blame, but I did not mean to do it." Plaintiff was arrested for Unlawful Conduct Toward a Child in violation of S.C. Code § 63-5-70.

Former Defendant Robert Stone (who has since been dismissed from this action) prepared an affidavit to support an arrest warrant for the charge of Unlawful Conduct Toward a Child. The affidavit stated: "[Plaintiff] admitted to throwing the child, excessively squeezing the child, dropping the child, and causing at least one impact injury to the child. These admissions are consistent with the injuries reported by the examing [sic] medical personell [sic]." (Dkt. No. 55-1.) Defendant Detective Jellico thereafter prepared an affidavit to support an arrest warrant

for the charge of Infliction or Allowing Infliction of Great Bodily Injury Upon a Child. The Jellico affidavit contained the same statement as did the Stone affidavit.

Plaintiff was indicted on both charges. The trial was held in March 2018, at which examining medical personnel and law enforcement testified. At the close of evidence, the presiding judge denied Plaintiff's motion for a directed verdict. The jury then found Plaintiff not guilty of both charges.

Plaintiff thereafter initiated this action against Defendants Jellico, Butler, Benton, Stone (in each's individual and/or official capacities) and the City of North Charleston. He brings claims pursuant to 42 U.S.C § 1983 for violation of his Fourth, Fifth and Fourteenth Amendment rights, as well as a tort claim against the City of North Charleston. Defendants move for summary judgment on all claims, which the Magistrate Judge recommends granting. Plaintiff objects to the R & R. (Dkt. No. 127.)

## II.   Legal Standard

### A.   Review of R & R

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight and the responsibility to make a final determination remains with the Court. *See, e.g.*, *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where there are specific objections to the R & R, the Court "makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. Where there are no objections to the R & R, the Court reviews the R & R to "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note; *see*

*also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) ("In the absence of objection . . . we do not believe that it requires any explanation.").

**B.      Motion for Summary Judgment**

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Id.* Therefore, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment must demonstrate that specific, material facts exist that give rise to a genuine issue. *See id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III. Discussion

#### A. Claims Against Defendant Butler

Plaintiff's counsel conceded that Defendant Butler should be dismissed, in part because Butler did not execute the arrest warrants at issue or provide any information that was included in them. In light of that concession, all claims against Defendant Butler are dismissed.

#### B. Fourth Amendment Claim Against the Individual Defendants

The Fourth Amendment protects from "unreasonable searches and seizures." U.S. Const. amend. IV. A claim for false arrest and malicious prosecution under the Fourth Amendment requires showing a lack of probable cause. *Roberts v. Laurens Cty. Sheriff's Dep't*, No. 605-1221-HMH, 2006 WL 361348, at *3 (D.S.C. Feb 15, 2006). Therefore, to establish a § 1983 claim based on violation of the Fourth Amendment, a plaintiff must show that the seizure was conducted without probable cause. *Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014). "Probable cause to justify an arrest arises when facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (internal quotation marks omitted). To demonstrate lack of probable cause, a plaintiff must show that the arresting officer "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller v. Prince George's Cty.*, 475 F.3d 621, 627 (4th Cir. 2007) (internal quotation marks and citations omitted). To demonstrate "reckless disregard," the plaintiff must show that, in light of all the evidence, the officer had "serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id*. If a plaintiff alleges material facts were omitted

from the affidavit, he must establish that the officer failed to inform the magistrate of facts that the officer knew would negate a finding of probable cause. *Id*. Allegations of negligence or honest mistake are insufficient. *Id*. at 627-28.

The Magistrate Judge finds that there is no dispute of material fact as to whether the arrest warrants supported probable cause, and the Court agrees. Only the information that the officers had at the time of the arrest is material to the probable cause inquiry. *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017). Prior to drafting their affidavits, Defendants Benton and Jellico were told by the infant's examining doctor that her injuries appeared not to be accidental. Plaintiff then told the officers that he squeezed the infant, tossed her onto a couch, hit her head on a doorknob, and sat on her. Plaintiff also told the officers: "I did it, I will take full blame[.]" The affidavits track the information the officers had at the time, including Plaintiff's own statements. Plaintiff objects, contending that the existence of probable cause is an issue of fact for the jury to decide. Here, there is no dispute as to what the arresting officers' knowledge was at the time they drafted the affidavits. And "[i]f the facts are undisputed and only one inference can be drawn form them, the question of existence of probable cause is for the court to determine." *Alexander v. Alexander*, 229 F.2d 111, 116-117 (4th Cir. 1956); *see also Bryant v. Town of Bluffton*, No. 9:17-cv-0414-DCN, 2019 WL 4439435, at *5 (D.S.C. Sept. 17, 2019) ("A finding of probable cause as a mater of law based on the facts and circumstances within the knowledge of the arresting officers is a legal conclusion."). Plaintiff argues that trial testimony given subsequent to the affidavits provided information contrary to the information underlying the affidavits. But no reasonable jury would conclude from this record that there is any dispute as to the existence of probable cause in the arrest warrant's affidavits.

C.  **Fifth Amendment Claim Against the Individual Defendants**

To bring a claim for violation of his Fifth Amendment right against self-incrimination, Plaintiff must demonstrate that he "has been compelled to be a witness against himself in a criminal case." *Bodel v. Linhardt*, No. 12-2425, 2013 WL 2481250, at *7 (M.D. Pa. June 10, 2013). As the Magistrate Judge observed, Plaintiff's complaint sets forth no allegations to support a Fifth Amendment claim, nor does Plaintiff argue that the record creates a material dispute of fact as to any such claim.

D.  **Fourteenth Amendment Claim against Individual Defendants**

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted). "Because the Fourth Amendment provides an explicit textual source for § 1983 malicious prosecution claims, the Fourteenth Amendment provides no alternative basis for those claims." *Evans v. Chalmers*, 703 F.3d 636, 646 n.2 (4th Cir. 2012). The Magistrate Judge found that because Plaintiff's claim is cognizable under the Fourth Amendment, as discussed, there is no basis to also bring the claim under the Fourteenth Amendment. Plaintiff makes no objection to that finding, which the Court adopts.

E.  **Section 1983 Claim Against Defendant City of North Charleston**

A municipality may be held liable under § 1983 "only where the constitutionally offensive actions of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Because the record does not support finding that the individual Defendants violated Plaintiff's constitutional rights, there is no basis to

conclude that a reasonable jury would also find the City of North Charleston liable for those violations.  Moreover, there is insufficient record evidence to support finding that the City of North Charleston had a requisite "policy or custom" of allowing, encouraging, or enabling officers to violate citizens' constitutional rights by relying on warrant affidavits not supported by probable cause.  Moreover, as the Magistrate Judge notes, if the record evidence were sufficient to support finding that these officers cloaked their lack of probable cause in multiple levels of hearsay in the affidavit, there is no reasonable basis to find that conduct would rise beyond an isolated incident to a "policy or custom."

**F.     Negligence/Gross Negligence/Recklessness/Wantonness Claim Against Defendant City of North Charleston**

Plaintiff alleges that the City of North Charleston is liable for allowing its officers to execute probable cause affidavits that contain material false statements and omissions.  To maintain a claim for negligence, a plaintiff must show "(1) the defendant owes a duty of care to the plaintiff; (2) the defendant breached that duty by a negligent act or omission; (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) the plaintiff suffered an injury or damages." *Roddey v. Wal-Mart Stores E., LP*, 784 S.E.2d 670, 675 (S.C. 2016).  "Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Etheredge v. Richland Sch. Dist. One*, 534 S.E.2d 275, 277 (S.C. 2000).  As discussed, from this record, a reasonable jury would not find that the individual Defendants executed affidavits to arrest Plaintiff that contained material false statements or omissions.  Therefore, the record does not support further finding that the City of North Charleston was negligent, grossly negligent, reckless or wanton in allowing any such conduct by its employees.

## IV.    Conclusion

For the foregoing reasons, the Court **ADOPTS** the R & R (Dkt. No. 124) as the order of the Court.  Defendants' motion for summary judgment (Dkt. No. 97) is **GRANTED**.  The Clerk is directed to close this action.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel<br>
Richard Mark Gergel<br>
United States District Judge

August 17, 2021
Charleston, South Carolina